**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 22 2016

JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA

v.

CARLOS LOPEZ

No. 16 CR 111-1

Judge James B. Zagel

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant CARLOS LOPEZ, and his attorney, EDWARD AUSTIN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The indictment in this case charges defendant with unlawfully engaging in the business of dealing in firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A) (Count One), and possession of a firearm by an unlawful alien, in violation of Title 18, United States Code, Section 922(g)(5)(A) (Counts Three through Six).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

1

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with unlawfully engaging in the business of dealing in firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

From no later than on or about February 3, 2015, until at least on or about October 6, 2015, at Joliet, in the Northern District of Illinois, Eastern Division, CARLOS LOPEZ, not being a licensed dealer within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

More specifically, between February 3, 2015 and October 6, 2015, LOPEZ sold 10 firearms to a person who, unbeknownst to LOPEZ, was working with law enforcement as a confidential informant (CI). These sales occurred over the course of four separate transactions, two of which also involved LOPEZ's brother, Clemente Lopez. For each transaction, LOPEZ met the CI in an apartment or car on the street, and the CI paid LOPEZ in cash that had been provided to him/her by law

2

enforcement ("official funds"). In total, LOPEZ sold the CI 10 firearms in exchange for a total of $5,225 in official funds. At no time has LOPEZ or Clemente Lopez ever been a licensed firearms dealer. LOPEZ acknowledges that the firearms he sold to the CI were manufactured outside the State of Illinois, and therefore traveled in interstate commerce prior to his possession of them.

The unlawful firearms sales LOPEZ made to the CI are as follows:

February 5, 2015

On or about February 5, 2015, LOPEZ and Clemente Lopez met the CI at an apartment located on the 700 block of Collins Street in Joliet, Illinois. Inside the apartment, and in exchange for $550 in official funds provided by the CI, LOPEZ handed the CI one Lorcin, model L25, .25 caliber pistol, bearing serial number 179992, and one Raven Arms, model P25, .25 caliber pistol, bearing serial number 492668. Additionally, during this transaction, LOPEZ and Clemente Lopez discussed with the CI the possible future purchase of a .22 caliber firearm with a 30-round magazine as well as a "ghost gun," which LOPEZ advised the CI could not be traced by law enforcement.

August 3, 2015

On or about August 3, 2015, at approximately 3:30 p.m., LOPEZ and Clemente Lopez met the CI in the CI's car near the 700 block of Collins Street in Joliet, Illinois. Inside the car, and in exchange for $1,100 in official funds provided by the CI, LOPEZ handed the CI one Star, model Ultra Star, 9mm caliber pistol, bearing serial number 2173475, and one Jimenez Arms, model JA Nine, 9mm

caliber pistol, bearing serial number 236922. During this transaction, LOPEZ mentioned to the CI that he also had a Taurus .40 caliber firearm for sale as well.

August 3, 2015

On or about August 3, 2015, at approximately 3:56 p.m., LOPEZ met the CI in the CI's car near the 700 block of Collins Street in Joliet, Illinois. Inside the car, and in exchange for $700 in official funds provided by the CI, LOPEZ handed to the CI one Taurus, model PT101AF, .40 caliber pistol, bearing serial number SNE78640.

October 6, 2015

On or about October 4, 2015, at approximately 10:07 p.m., LOPEZ sent a text message to the CI with a photograph depicting five firearms, four semi-automatic pistols and one revolver. At approximately 10:20 p.m., LOPEZ sent another text message to the CI, which stated: "This job is for all $2875." During a subsequent recorded telephone call, the CI agreed to purchase the firearms from LOPEZ for $2,875.

On or about October 6, 2015, LOPEZ and the CI agreed to meet at a bar in Romeoville, Illinois. Thereafter, during a recorded call, LOPEZ advised the CI to instead proceed to a residence on McKool Street in Joliet, Illinois. Approximately 10 minutes later, the CI called LOPEZ back, and advised LOPEZ that he/she observed police officers in the area of McKool Street. The CI asked LOPEZ to meet him/her at a restaurant located at 300 North Independence in Romeoville, Illinois. LOPEZ agreed.

In the parking lot of the restaurant, the CI got into LOPEZ's car. Inside LOPEZ's car, LOPEZ explained that he did not bring the guns with him because he saw the police driving in the area. LOPEZ directed the CI to the location of the firearms, describing how he "stashed 'em pretty good," and advised the CI that he/she could follow LOPEZ to the location of the firearms. The CI handed LOPEZ $2,875 in official funds. The CI exited LOPEZ's car and followed LOPEZ to a residence on the 200 block of McKool Street. When the CI arrived there, and during a recorded call with LOPEZ, LOPEZ directed the CI to a garbage can in the back of the residence, in which the CI found the following guns, which LOPEZ had previously placed there: (1) one Taurus, model PT24, .40 caliber pistol, bearing serial number SD096646; (2) one Ruger, model P91DAO, .40 caliber pistol, bearing serial number 340-17803; (3) one Chippa-Firearms LTD, model 1911-22, .22 caliber pistol, bearing serial number D57082; (4) one Jimenez Arms, model JA Nine, 9mm caliber pistol, bearing serial number 135901; and (5) one Smith and Wesson, model 66, .357 caliber revolver, bearing serial number AAU8713.

### Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.  In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8.  Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.  For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.  **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

6

Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

      b.      **Offense Level Calculations**.

          i.      Pursuant to Guideline § 2K2.1(a)(6)(A), the base offense level is 14 because defendant was a prohibited person, namely an unlawful alien, at the time of the offense.

          ii.      Pursuant to Guideline § 2K2.1(b)(1)(B), the offense level is increased by 4 because the offense involved between 8 and 24 firearms;

          iii.      It is the government's position that, pursuant to Guideline § 2K2.1(b)(5), the offense level is increased by 4 because the defendant engaged in the trafficking of firearms. It is the defendant's position that this specific offense characteristic does not apply. Each party is free to present evidence or argument to the Court on this issue.

          iv.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

     v.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

     c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

     d.  **Anticipated Advisory Sentencing Guidelines Range**. It is the government's position that the anticipated offense level is 19, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release and fine the Court may impose. It is the defendant's position that the anticipated offense level is 15, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 18 to 24 months' imprisonment, in addition to any supervised release and fine the Court may impose.

     e.  Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-

binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $5,225 as compensation for government funds that defendant received during the investigation of the case.

14.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

16.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 16 CR 111.

18.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

       ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

       iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

       iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

       v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

12

vi.       At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

21.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him,

13

and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22.  Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.  For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

14

**Other Terms**

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

**Conclusion**

26.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by

any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.　　Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29.　　Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___8/22/2016___

_Zachary T. Fardon_ by C. Hotaling                _Carlos J. Lopez_
ZACHARY T. FARDON                                 CARLOS LOPEZ
United States Attorney                            Defendant

_Timothy J. Storino_                              _Edward Austin_
TIMOTHY J. STORINO                                EDWARD AUSTIN
Assistant U.S. Attorney                           Attorney for Defendant

17